**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10CR10**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **TYSON LARENSA LYNCH.** ) | |
| _____ ) | |

**THIS MATTER** is before the court upon defendant's Motion to Suppress. Such motion was accompanied by defendant's affidavit. The government filed a response to such motion, and an evidentiary hearing was conducted on March 15, 2010, at which both the defendant and the government appeared and were represented by counsel. Having considered defendant's Motion to Suppress and heard the testimony of both the witness for the government, the witnesses called by defendant, and the defendant, reviewed the pleadings, and it appearing that a request for hearing has been included in the government's response, the court enters the findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

The Grand Jury found probable cause to believe that on or about January 25, 2009, defendant did knowingly and intentionally possess with intent to distribute a

1

controlled substance, to wit, crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Indictment, Docket Entry #1, at Ct. 1. The Grand Jury further found that on that same date, defendant did knowingly and unlawfully use and carry a firearm, and, in furtherance of a drug trafficking offense, did possess such firearm, to wit, a Desert Eagle .50 AE caliber pistol.

On March 1, 2010, defendant filed the instant Motion to Suppress, therein contending that evidence seized during the search of the vehicle he was operating on January 25, 2010, and any fruits of such search, should be suppressed. Defendant argues that the search was illegal because it was "without articulable suspicion and/or probable cause . . . ." Motion to Suppress, Docket Entry #14, at 2. No case law is cited in support of such contention. See L.Cr.R. 47.1(C). By way of affidavit, defendant averred that the contents of the motion are true, including the following:

> 5. That the Officer advised the Defendant he stopped the vehicle because of an "inoperable left brake light", to which the Defendant objected and remonstrated that the brakes and attendant lights were fully functional and operational.
>
> 6. That upon closer examination and testing of the alleged brake light by both the Defendant and Officer McGaha, the brake light of the vehicle functioned flawlessly and without any type of alleged malfunction or problem.
>
> 7. That after discovering that the brake light functioned properly while in the presence of the Defendant, Officer McGaha then accused the Defendant of driving a vehicle "that smelled like marijuana" to which the Defendant again denied and objected, but

over the objection of the Defendant, said Officer conducted an extensive search of the vehicle that was improper, illegal and unconstitutional.

Motion to Suppress, Docket Entry #14, at 1-2, ¶¶ 5-7.

In its response filed March 10, 2010, the government argues that the stop of defendant's vehicle was proper because probable cause existed to believe that a traffic violation had occurred. Response, Docket Entry #15, at 3. The government cites the following cases in support of such proposition: Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Whren v. United States, 517 U.S. 806, 812-13(1996). They argue that the police officer's observation of a defective brake light provided the officer with probable cause to initiate the traffic stop. Response, Docket Entry #15, at 3. The government goes on to argue that not only was the stop proper, the search of the passenger area[1] of the vehicle was proper inasmuch as he perceived the odor of marijuana when he approached the vehicle and defendant's passenger admitted that he had recently smoked marijuana. The government argues, based on such

---

[1] At the hearing, the defendant contested the officer's use of the term "passenger area" (in a slightly different context) suggesting that the passenger area of a vehicle is limited to the area where an actual passenger, as opposed to the driver, sits. The undersigned respectfully disagrees and finds that the common meaning of "passenger area" is the interior area of a vehicle in which persons are transported, regardless of whether they are the driver or passenger. The word is typically used to distinguish areas in which the occupants of a vehicle have immediate access, as opposed to the trunk or the engine compartment. The court does, however, note a distinction between the "passenger side" and "driver side" of the vehicle, with the former usually referring to the starboard (right hand) side and the later referring to the port (left hand) side.

perceptions of the officer, that the search of the passenger area of the vehicle was based on probable cause under the automobile exception to the warrant requirement of the fourth amendment to the United States Constitution. The government cites the following cases in support of such proposition: United States v. Ross, 456 U.S. 798 (1982); United States v. Collins, 412 F.3d 515, 518 (4th Cir. 2005).

II.  **Evidence and Arguments Received at the Hearing**

   A.  **Sergeant Brandon McGaha**

The government called its only witness, Sergeant Brandon McGaha, who was the officer who both initiated the stop of defendant's vehicle and conducted the search. Sergeant McGaha testified that he has been a law enforcement officer for 10 years and is presently the Patrol Supervisor with the Hendersonville, North Carolina, Police Department.

Sergeant McGaha testified that in the early morning hours of January 25, 2010, he observed the vehicle that defendant was operating on Highway 64, eastbound. While he testified that defendant was otherwise lawfully operating the vehicle, he observed that when defendant applied the brakes, his left rear tail light would go out and the left rear brake light would not illuminate. Upon making such observation, he activated his blue light, effectuating a stop on Main Street in the business district of Hendersonville. He further testified that he approached the driver's side of the car

4

and, after the driver rolled down his window, he smelled the odor of marijuana emanating from the passenger area of the vehicle. He testified that he took the defendant's license and registration and headed back to his patrol car to write a warning ticket and call for back up based on the odor of marijuana. After back up arrived, Sergeant McGaha testified that he had defendant step out of the vehicle and come to the back of the car, where he conducted a pat down of his person and issued the warning ticket for the faulty brake light. After defendant signed the warning ticket, Sergeant McGaha asked the defendant about the odor of marijuana, who allegedly said that the odor was coming from his passenger, his brother. Sergeant McGaha then sat defendant down on a curve without handcuffs in an area between defendant's car and the patrol car.

Sergeant McGaha then asked defendant's passenger to step out of the car, patted him down, and smelled the odor of marijuana about his person. Sergeant McGaha testified that he saw the passenger place something in his pocket after the stop. Sergeant McGaha asked the passenger about marijuana use, and Sergeant McGaha testified that the passenger stated that he had recently used marijuana. In patting down the passenger, however, the officer discovered currency in the amount of $1027.00. He testified that the passenger told him that the money belonged to defendant, whereupon Sergeant McGaha returned the currency to defendant.

After returning the currency to defendant, and placing both defendants on the sidewalk without handcuffs, Sergeant McGaha testified that he began the search of the vehicle based the odor of marijuana and suspicious activity, to wit, the furtive movement of the passenger after the stop. Sergeant McGaha testified that he saw what he believed to likely be the handle of a pistol underneath a child's car seat located on the rear passenger side of the car. After adjusting his view, he testified, he was sure it was a pistol. He then removed the pistol, and Sergeant McGaha testified that defendant admitted the gun was his so that his passenger would not take the blame.

After discovering the gun, Sergeant McGaha placed defendant in the patrol car. Sergeant Mcgaha returned to the defendant's car to continue the search and found a pill bottle under the same car seat, which he testified contained crack cocaine. Sergeant McGaha testified that he returned to the car with the pill bottle, read defendant his *Miranda* rights, and then asked defendant if the cocaine was his. Sergeant McGaha testified that defendant stated the cocaine was his and that he took responsibility for everything in the car.

Also introduced into evidence during Sergeant McGaha's testimony was a digital recording of the traffic and arrest, taken from such officer's dash camera. Sergeant McGaha testified that the digital system captures images beginning 30

seconds before he activates his blue lights. While the audio system did not work outside of the car, it did capture some remarks in the car. In summary, the digital recording was wholly in accord with the testimony of the officer as to the reason the vehicle was stopped. While there is no audio outside the vehicle, the recording is also in accord with the testimony provided by Sergeant McGaha as to the actions he took.

On cross examination, defendant confronted Sergeant McGaha on why certain aspects of his testimony differed from his police report. First, defendant questioned why he testified that he smelled marijuana from the driver's side of the car when he wrote in his report that "I smelled marijuana coming from the passenger area." Defendant's Ex. 1, at p. 2. Sergeant McGaha explained that he considered the passenger area to be the entire interior of the car, not the passenger side of the car. Defendant then asked Sergeant McGaha as to why other parts of his testimony were not included in the police report, who the testified that by reading the report, it had refreshed his recollection as to other details of the incident. Finally, defendant questioned Sergeant McGaha as to why the digital recording, placed into discovery the week before the hearing, was not produced earlier. Sergeant McGaha responded that it was only when the motion to suppress was filed that he realized the need to produce the recording.

**B.** **Mark Lynch**

Defendant called his passenger on the night of his arrest, his brother, mark Lynch, identified in the police report and at the hearing by Sergeant McGaha as Martin Lynch. Mr. Mark Lynch testified that the officer never asked him about marijuana use and that while he had been drinking that evening, he had not smoked marijuana that night. He testified that the defendant had given him the $1027.00 earlier in the day so that he could pay a fine and get his license returned. He testified that his brother had just picked him up and was taking him to play pool at a club, and at that club, he would be turned away at the door if he smelled like marijuana. He also stated that his brother was employed as a landscaper.

C.  **Angela Clayton**

Defendant next called Angela Clayton, who testified that she is defendant's girlfriend. She was not in the car during the stop and not present for the search. She testified that when she came later to pick up her keys from the car (which she owns) while it was in impound, she did not notice the smell of marijuana in the vehicle. She testified that while she knows defendant does not smoke marijuana, she does know that Mark Lynch smokes marijuana. She testified that no smoking was ever allowed in her car because her child is asthmatic.

D.  **Tyson Larensa Lynch**

Defendant next took the stand. He testified that he never smoked marijuana and

8

that he too was asthmatic. He testified that after he was arrested and the vehicle was being placed on a tow truck, he had the backup officer test the brake lights three times and they worked each time. Defendant denied he told Sergeant McGaha that his brother smoked marijuana. He further testified that while he claimed ownership of the pill bottle, he did not know and did not claim ownership of any crack cocaine that was found in the bottle.[2]

### E. Oral Arguments

The government waived opening argument and defendant submitted the motion on the evidence presented. Thus, there were no legal arguments beyond those contained in the motion and the government's Response.[3]

## III. Discussion

### A. Introduction

In his motion, defendant seeks to suppress all evidence seized during the search of his vehicle, and any fruits therefore, contending that " the stop, search, and seizure of the car in which the Defendant was operating was improper, illegal and without

---

[2] The court notes at this point that it distinctly recalls from viewing and listening to the digital recording that defendant yelled the word "F_ _K!" from the back seat of the patrol car when Seargent McGaha was seen emerging from defendant's car with the pill bottle.

[3] The government should note for future reference that a response to motion should be captioned as a "response" and not as a "reply." See L.Cr.R. 47.1.

articulable suspicion and/or probable cause . . . ." Motion to Suppress, Docket Entry # 14, at 2. Motions to suppress are mixed questions of law and fact that are disposed of by the court without the assistance of the finder of fact. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005); Fed.R.Crim.P. 12(b)(3)(C), 12(d); Fed.R.Evid. 104(a). The court will first consider the propriety of the "stop" and then consider whether the search complied with the fourth amendment as a search incident to arrest or as a probable cause search under the automobile exception to the warrant requirement of the fourth amendment.

**B.   The Stop**

In this case, Sergeant McGaha testified that he stopped the vehicle for a non operative brake and tail light. The digital recording of the stop fully corroborates such testimony as it unequivocally shows that the brake lamp and tail light were malfunctioning immediately prior to the stop. That defendant testified that the light was tested after the arrest and was found to be functioning is simply not probative as to what the officer actually saw *before* the arrest.[4] Thus, it appears that Sergeant McGaha had probable cause to stop the vehicle inasmuch as Chapter 20-154 of the North Carolina General Statutes requires proper signals on starting, stopping or

---

[4] The court notes that no testimony was supplied by defendant that the testing was done under similar conditions, to wit, with the headlights on, the engine on, and the transmission engaged with the vehicle moving. See Fed.R.E. 702.

10

turning and Chapter 20-129 provides for certain operable lights on vehicles, including stop and rear lamps.

When a defendant moves to suppress evidence seized during a probable cause traffic stop, the Court of Appeals for the Fourth Circuit has recently reiterated that

> It is well-established that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). In other words, "'[w]hen an officer observes a traffic offense-however minor-he has probable cause to stop the driver of the vehicle.'" *United States v. Hassan-El*, 5 F.3d 726, 730 (4th Cir.1993) (*quoting United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990)).

United States v. Flores, 2010 WL 750080, 5 (4th Cir. March 5, 2010). In this case, the evidence is overwhelming that Sergeant McGaha had probable cause to stop defendant, resulting in no violation of the protections of the fourth amendment to the United States Constitution.

**C.    The Search**

Probable cause to stop a vehicle is not, however, probable cause to search a vehicle. The appellate court in Flores, supra, has provided clear instructions concerning non-consensual searches after a probable cause stop:

> Even where an initial stop is justified by probable cause, after satisfying the purpose for which the stop was made and issuing a citation or warning, the officer must permit the driver to proceed on his way without further delay, and any continued detention for questioning is illegal absent a reasonable suspicion of a serious crime. *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir.2004); *United States v. Rusher*, 966

F.2d 868, 876-77 (4th Cir.1992).

Id., 2010 WL, at *7. Thus, it is the government's burden to now show that Sergeant McGaha had, at the time of the search, a "reasonable suspicion of a serious crime." Id.

At the hearing, Sergeant McGaha testified he smelled the odor of marijuana coming from the passenger area of the vehicle when he first approached the vehicle and that he observed suspicious activity when the passenger placed something in his pocket. While defendant disputes that such odor was present, the evidence defendant presented gives the court no reason to question Sergeant McGaha's credibility. Defendant's own testimony was impeached on cross examination and, as to supposed lack of knowledge as to the contents of the pill bottle, his testimony was not consistent with his excited utterance (in the form of an expletive) recorded in the police car. Further, Mr. Mark Lynch's testimony was impeached by later testimony received from Ms. Lynch concerning his marijuana use.

Finding Sergeant McGaha to be most credible, the court must next determine whether his perception of the odor of marijuana from the passenger area of the car will support a reasonable suspicion of serious criminal activity. First, the court will consider the standard applicable to reasonable suspicion:

> The *Terry* reasonable suspicion standard requires an officer to have a reasonable suspicion that criminal activity is afoot before he may

conduct a brief investigatory stop of a person, 392 U.S. at 30, 88 S.Ct. 1868, or continue to seize a person following the conclusion of the purposes of a valid stop, *see, e.g., United States v. Rusher*, 966 F.2d 868, 876-77 (4th Cir.1992) (holding that, during a routine traffic stop, the officer may request a driver's license and vehicle registration, run a computer check, and issue a citation, but that "[a]ny further detention for questioning is beyond the scope of the Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime"). The standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). However, the *Terry* reasonable suspicion standard does require "a minimal level of objective justification" for the police action. *Id.* "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." Id. at 123-24, 120 S.Ct. 673 (citation and internal quotation marks omitted). We have said that the Terry reasonable suspicion standard is "a commonsensical proposition" and that "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993).

>The reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In assessing whether reasonable suspicion is present, we review the district court's findings of historical fact for clear error and the determination of reasonable suspicion de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

United States v. Grady, 214 Fed.Appx. 324, 326-327 (4th Cir. 2007). In this case, Sergeant McGaha testified that he had served as a police officer for ten years and that he perceived the odor of marijuana emanating from the interior of the vehicle. Review of all the evidence presented shows that Sergeant McGaha had a reasonable suspicion that criminal activity was afoot. The only issue that remains is whether smelling the

odor of marijuana would amount to a reasonable suspicion of a <u>serious</u> crime.

Whether smelling the odor of marijuana in a motor vehicle would result in a reasonable suspicion of a serious crime has been directly addressed by the Court of Appeals for the Fourth Circuit in the context of North Carolina law, making such decision controlling. In <u>United States v. Sheetz</u>, 293 F.3d 175 (4th Cir. 2002), the appellate court held, as follows:

> Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car. *United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991) (holding that, because marijuana has a distinct smell, "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage").

<u>Id.</u>, at 184. Under North Carolina law, even the possession of marijuana may amount to a felony, unless such possession is of a very small amount. <u>See</u> N.C.Gen.Stat. § 90-95(d)(4). In this case, Sergeant McGaha clearly had a reasonable suspicion of a serious crime.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Suppress (#14) be **DENIED.**

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section

636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: March 18, 2010

Dennis L. Howell
United States Magistrate Judge